STATE OF NEBRASKA V. CHICAGO, BURLINGTON & QUINCY
RAILROAD COMPANY.

FILED FEBRUARY 28, 1911.   No. 16,535.

1. Courts: JURISDICTION. By the provisions of the constitution this
   court has original jurisdiction of all civil cases in which the state
   is a party. Const., art. VI, sec. 2.

2. ———: ———. Any civil action in which the state has such interest
   as that the action may be brought and prosecuted in the name of
   the state is within the original jurisdiction of this court.

3. Intoxicating Liquors: VIOLATION OF STATUTE: INJUNCTION. A
   court of equity has jurisdiction to enjoin the violation by a rail-
   road corporation of the act of 1909, which forbids intoxication
   and the drinking of intoxicating liquors upon railroad trains.
   Laws 1909, ch. 83.

4. ———: ———: ———: PARTIES: JURISDICTION. Such action is
   properly brought in the name of the state by the attorney gen-
   eral acting in his official capacity, upon the application of the
   state railway commission; and when so brought this court has
   original jurisdiction thereof.

ORIGINAL action by the state. Demurrer to petition.
*Demurrer overruled.*

*William T. Thompson, Attorney General,* and *Grant G.
Martin,* for plaintiff.

*J. E. Kelby* and *H. F. Rose, contra.*

SEDGWICK, J.

This is an original action in this court, begun in the
name of the state by the attorney general upon the appli-
cation of the state railway commission. The petition
alleges that defendant is a corporation authorized to do
business in this state, and that the business which it .is
authorized to do "is the building and operation of public
highways in said state for the carriage and transportation
of persons and property within and through, and in and

out of, said state for hire and profit; that defendant has
been for many years last past, and now is, operating about
2,000 miles of railroad in the state of Nebraska, carrying
thereon and thereover passengers and freight, both state
and interstate, and that on many of its passenger trains
in said state it maintains and hauls dining and buffet cars
for the convenience and accommodation of its passengers,
and for profit and benefit to defendant"; that, notwith-
standing the provisions and prohibitions of the statute
hereinafter set forth, "the said defendant, by and through
its employees, agents, conductors and porters, has been
continuously for many years last past, and now is, fur-
nishing, supplying and selling to its passengers patroniz-
ing said dining and buffet cars, through its servants,
agents, conductors and porters, in and upon its said din-
ing and buffet cars in the state of Nebraska, intoxicating,
malt, spirituous and vinous liquors without itself, or its
porters, servants, agents or conductors, first having pro-
cured a license to sell such liquors in the counties through
which it hauls its said dining and buffet cars in the state
of Nebraska." It specified 45 counties of the state
through which the defendant so operates, and alleges:
"That the sales of said liquors on said cars are unlaw-
fully made, and said liquors are unlawfully suffered and
permitted by defendant, its agents, conductors, employees
and porters to be drunk thereon; that the attention of de-
fendant has been, by the Nebraska state railway commis-
sion, repeatedly called to the fact that such liquors were
and are being unlawfully sold on its said cars; that said
commission has urged and requested defendant to desist
from selling said liquors on said cars; yet, notwithstand-
ing said notice and request by said commission, defendant
has failed, neglected and refused to discontinue said un-
lawful conduct, and still fails, neglects and refuses to re-
spect the laws of the state of Nebraska in that behalf and
the request and demand of the said Nebraska state rail-
way commission; that said dining and buffet cars, on
which said intoxicating liquors are by defendant, its

agents, conductors, employees and porters so as aforesaid unlawfully sold and suffered and permitted to be drunk, are attached to and hauled by its fast limited passenger trains, which do not stop at all its stations on its lines, but only at a limited number thereof, making rapid runs and crossing county lines without stopping, and stopping only a few minutes at larger stations, thereby making it impossible for county and prosecuting attorneys to locate the exact county where sales are made, the name or names of the individual or individuals through whom the sale or sales are made, the name or names of the person or persons to whom the sale or sales are made, thus rendering it practically impossible for such county attorneys to bring and successfully prosecute criminal actions for individual violations of the law. Moreover, it is rendered practically impossible to make arrests of persons on said trains without interfering with and delaying interstate commerce and the carrying of the United States mails; and, to secure obedience to and respect for the laws of the state of Nebraska in the premises, the state is without any adequate remedy or means of redress, except in a court of equity by injunction to restrain defendant, its officers, agents, servants, conductors, employees and porters from violating said law. That defendant did not have, and has not now, any express power or authority under its articles of incorporation or charter to sell intoxicating liquors within the state of Nebraska, nor is the power or authority to sell intoxicating liquors one of the implied powers of such corporation, nor is such sale incidentally necessary to enable defendant to carry into effect its express or chartered powers as a corporation, and all sales of intoxicating liquors that are being made and have been made by defendant are *ultra vires;* and that the sale of intoxicating liquors by and on the part of defendant constitutes an excess and abuse of its corporate franchise, a violation of public law to the public detriment, productive of public mischief, tends to defeat public policy, and constitutes a continuous nuisance that cannot be

stopped or abated, except by injunctive order made and issued in and by a court of equity." The petition also asks for a temporary injunction against the defendant, restraining and enjoining the defendant, "its agents, officers, servants, conductors, employees and porters from selling intoxicating, malt, spirituous or vinous liquors to its passengers or others on its said dining and buffet car or cars, or on any other of its said cars, in its trains carrying passengers in any of the counties in the state of Nebraska through which the same are hauled, in which defendant has not first procured a license to sell said liquors, and enjoining and restraining said defendant, its agents, officers, servants, conductors, employees and porters from suffering and allowing said liquors to be drunk upon its passenger trains within the state of Nebraska; that upon the final hearing of this cause said injunction be made perpetual."

To this petition the defendant has filed a general demurrer upon two grounds: First. "The court has no jurisdiction of the subject matter of the action." Second. "The petition does not state facts sufficient to constitute a cause of action." The statute forbids the selling of intoxicating liquors in this state without first obtaining a license therefor, and in 1909 the legislature enacted a statute entitled, "An act to prevent intoxication and the drinking of intoxicating liquors on passenger trains and coaches in the state of Nebraska, and providing a penalty for failure to enforce the provisions thereof." Laws 1909, ch. 83. The act appears as sections 38a-38d, ch. 50, Comp. St. 1909. The first section of the act is as follows: "It shall be unlawful for any person to be found in a state of intoxication or to drink intoxicating liquors of any kind, as a beverage, upon any railway passenger train, coach, closet or vestibule thereof, or platform connected therewith, while said passenger train or coach is in the service of passenger transportation within this state; and all conductors finding any person in a state of intoxication or drinking intoxicating liquors of any kind, as a beverage,

said train or trains, are hereby authorized and empowed to remove such person from the train, and if any in found drinking intoxicating liquors thereon shall not desist or abstain immediately after being advised to so do by such conductor, then such intoxicated person or persons drinking intoxicating liquors of any kind as a beverage upon said train, may be removed by such conductor at the first station at which the train may stop, having a depot and a depot platform, provided that such removal shall not take place in the night time, unless there are people upon said platform in whose charge such person so removed may be placed; and if the person removed has any unused portion of his ticket for transportation, the conductor so removing him from said train shall furnish the person so removed with a written statement showing the amount of such unused transportation, and the same shall entitle the holder to a refund, from the railroad company issuing the same, of the value of the unused transportation, which shall be payable at any station of the company where tickets are sold, upon demand and surrender of the conductor's written statement aforesaid." The second section makes it a misdemeanor for any person to be found in an intoxicated condition riding upon railroad trains, or found drinking intoxicating liquors of any kind as a beverage after having been ordered to desist therefrom by the conductor, while on such train. The third section makes it the duty of the railroad companies to keep the provisions of this act in plain, legible print posted in some conspicuous place in each and every passenger coach, sleeping or dining car; and the fourth section of the act makes it the duty of the Nebraska state railway commission "to see that the provisions of this act are enforced."

The first question presented is as to the jurisdiction of this court. The original jurisdiction of this court is derived from the constitution. Legislation cannot enlarge or restrict it. The constitution gives this court original jurisdiction of all "civil cases in which the state is a

46

party." Const., art. VI, sec. 2. If an action of this na-
ture can properly be brought by the state, this court has
orignal jurisdiction thereof. The question of jurisdiction,
then, depends upon the two propositions: First. Is this
a matter of equitable cognizance? Second. If it is, is
the state, as such, the proper party to prosecute the
action? The courts of this state, so far as we are aware,
have never been called upon to enjoin the sale of liquor,
nor to enjoin any action that did not affect property
rights, nor directly interfere with personal rights or privi-
leges. This action so far, then, is without precedent in
this state. But this is not a reason for refusing the aid
of a court of equity. The jurisdiction of such courts arose
from the necessity of adapting new remedies to new con-
ditions. It is the duty of a court of equity, as was said by
an early English chancellor, to "adapt its practice and
course of proceeding, as far as possible, to the existing
state of society, and to apply its jurisdiction to all those
new cases which, from the progress daily making in the
affairs of men, must continually arise, and not from too
strict an adherence to forms and rules established under
very different circumstances, decline to administer justice
and to enforce rights, for which there is no other remedy,"
and Judge Redfield remarks that this language of the
chancellor "is certainly worthy of the ablest, the wisest,
and best judges who ever administered the chancery law
of England or America." 2 Redfield, Law of Railways
(6th ed.) p. 366. We are then to inquire whether this
proceeding is founded on reason and justice and comes
within the fundamental and long established principles of
equity jurisprudence. State v. Crawford, 28 Kan. 726. It
will be conceded that equity will not interfere to punish
crime; it will not enjoin actions solely because they are
forbidden by the criminal law. The criminal law is to be
enforced by prosecution for its violation, in which the
right of trial by jury must remain inviolate. But the
jurisdiction of a court of equity "is not ousted by the fact
that the obstructions are accompanied by or consist of

acts in themselves violations of the criminal law." *In re Debs*, 158 U. S. 564. If the facts are such as to require equitable action, those courts will apply the remedy, although the act enjoined is criminal and may be punished as such. "The penalty for a violation of such injunction is no substitute for, and no defense to, a prosecution for criminal offenses committed in the course of such violation." *In re Debs, supra*. The opinion of Mr. Justice Brewer in the case above cited is unusual, even in the work of that eminent jurist, for its clearness of expression in the application of established principles to new conditions, and, while we derive much assistance from that opinion, it contains one expression which has caused the writer much hesitation and careful study. At page 593 of the official report the author says: "Something more than the threatened commission of an offense against the laws of the land is necessary to call into exercise the injunctive powers of the court. There must be some interferences, actual or threatened, with property or rights of a pecuniary nature, but when such interferences appear the jurisdiction of a court of equity arises, and is not destroyed by the fact that they are accompanied by or are themselves violations of the criminal law." The same great jurist said in another case: "The dollar is not always the test of the real interest. It may properly be sacrificed if anything of higher value be thereby attained." *United States v. Western Union Telegraph Co.*, 50 Fed. 28. It seems to us that civilization is so far advanced that there are rights and privileges, not predicated upon "the dollar," that are worthy of the protection of the state, and, when other means fail, the principles of equity judisprudence have sufficient vitality to afford the means adequate for that purpose.

There is another element in this case not involved in the case considered by Mr. Justice Brewer, and which, it seems to us, is of controlling importance. The defendant is a public service corporation; it exercises the right of eminent domain, and is one of the instrumentalities of the

state for promoting the public welfare. As such, the state exercises a direct supervision and control over it, and is in a sense responsible for its policies and methods. The supreme court of Wisconsin has said that a court of equity will assume jurisdiction: "(1) When a corporation is abusing powers given for public purposes; (2) or is committing a breach of trust; (3) or is acting adversely to public policy." *Attorney General v. Chicago & N. W. R. Co.,* 35 Wis. 425, 527. The supreme court of Indiana enjoined an incorporated social club from conducting prize fights, and stated the law to be that "an injunction against the abuse of corporate privileges by conducting prize fights will not be denied because the wrongful acts constitute crimes." *Columbian Athletic Club v. State,* 143 Ind. 98. In Kansas, an action was brought "to perpetually shut up and abate the further continuance of a certain illegal liquor saloon." The court declared that such a saloon is a public nuisance, not only by the express provisions of their statute, but also "from the necessary implications of the statute, and by the indirect force of the statutes, which make the keeping of the saloon, and the consummation of each sale of intoxicating liquors, criminal offenses." The matter is discussed at large, and the court concludes that the relief ought to be granted but for the provisions of their statute, which directs that "upon the judgment of any court having jurisdiction, finding such place to be a nuisance under this section, the sheriff, deputy, or undersheriff, or the constable of the proper county, or marshal of any city where the same is located, shall be directed to shut up and abate such place." *State v. Crawford,* 28 Kan. 726. This is held to be a plain and adequate remedy at law granting all the relief that a court of equity could give.

Our statute does not provide such a remedy at law, and the conditions of this case are quite different from those involved in the suppression of an ordinary illegal liquor saloon. The policy of our state as regards the matters herein complained of is clearly marked out in its legisla-

tion. The sale of intoxicating liquors without license is illegal. The sale or use of intoxicating drinks on railroad trains is especially contrary to the declared policy of the state. There can be no doubt that it is within the authority of the legislature to declare and enforce this policy. The comfort and safety of the traveling public are involved, as well as other ordinary considerations usually thought sufficient to bring the subject matter of the legislation within the police power of the state. Contrary to this policy of the state, this great corporation, which is peculiarly subject to the regulation and control of the law-making power, is encouraging and promoting the drinking of intoxicating liquors by its passengers on its trains in direct violation of the laws of the state, and in direct violation of the duty expressly imposed upon it by the statute, which is designed to prevent such practice in the interest and for the safety of the people of the state, for whose service the corporation was created and whose convenience and safety it is required by law to serve and protect. It is doing this, "not merely occasionally or incidentally; but * * * openly, publicly, repeatedly, continuously, persistently, and in direct defiance of the constitution and statutes of the state. This we think makes them nuisances by the necessary implications of the statutes, and by the necessary but indirect force of the statutes. The repeated, continuous and persistent violations of the statutes are what make them nuisances, independent of the express terms of the statute declaring them to be such. Indeed, we would think that every place where a public statute is openly, publicly, repeatedly, continuously, persistently and intentionally violated is a public nuisance." *State v. Crawford, supra.* In that case their statute provided a complete and adequate remedy, but our statute has failed to do so. A reference to the allegations of the petition above quoted will show that individual prosecutions, if indeed practicable, are wholly inadequate to the situation. It is not so much a matter of injury to the several counties through which these

trains pass or the people thereof, as it is to the people of the state generally who travel through those counties. Experience shows that the burden and expense of enforcing the law and vindicating the policy of the state will not be assumed by local prosecuting authorities; and that the probable failure of such attempted prosecutions, in a measure at least, justifies such inaction.

We think that these considerations require courts of equity to assume jurisdiction, and also invest the state with the power and duty to act. In the case to which we have so often referred we find the following language: "It is obvious. from these decisions that while it is not the province of the government to interfere in any mere matter of private controversy between individuals, or to use its great powers to enforce the rights of one against another, yet, whenever the wrongs complained of are such as affect the public at large, and are in respect of matters which by the constitution are entrusted to the care of the nation, and concerning which the nation owes the duty to all the citizens of securing to them their common rights, then the mere fact that the government has no pecuniary interest in the controversy is not sufficient to exclude it from the courts, or prevent it from taking measures therein to fully discharge those constitutional duties." *In re Debs,* 158 U. S. 564, 586. This seems also to be the duty of the state in such matters as are entrusted to its care.

In *State v. Pacific Express Co.,* 80 Neb. 823, the original jurisdiction of this court is maintained in language stronger than is necessary to justify our jurisdiction in this case. This court, speaking through LETTON, J., there declared the law to be: "The jurisdiction conferred upon this court by the constitution 'in all civil cases in which the state shall be a party' is not confined to cases in which the state has a mere pecuniary interest, but may extend to all cases in which the state, through its proper officers, seeks the enforcement of public right or the restraint of public wrong. A wrong of a nature which affects the rights and interests of people living in almost every city,

town and village in the state, as well as persons living in the country, when committed by a public service corporation, is a public wrong. An action to restrain such a wrong by the state is within the jurisdiction of this court." This view of the law is again emphatically indorsed by the court, speaking through BARNES, J., in State v. Adams Express Co., 85 Neb. 25. Referring to the decisions above recited, he says: "On proper pleas, and after a full hearing, the jurisdiction of the court and the right of the state to maintain the action were sustained. * * * Having finally adjudicated those questions, they will not again be referred to in this opinion." We must now sustain these principles in the case at bar, or overrule those decisions.

The statute expressly makes it the duty of the state railway commission to see that the law against having or drinking intoxicating liquors on railroad trains is enforced. In performing that duty the railway commission advised and sanctioned these proceedings. We conclude, then, that the matter presented is a proper subject for equitable cognizance; it is within the province of the state to prosecute the proceedings; and, the state being the proper party plaintiff, this court has original jurisdiction.

The demurrer to the petition is therefore

OVERRULED.

LETTON, J., absent and not sitting.

BARNES, J., dissenting.

I am unable to concur in the majority opinion. It was the purpose of the fundamental law to make this a court of review, and not one of general jurisdiction. To that end the constitution, by which this court was created, fixed and determined its jurisdiction. It is expressly stated in that instrument that "the supreme court shall have jurisdiction in all cases relating to the revenue, civil cases in which the state is a party, mandamus, quo warranto, habeas corpus, and such appellate jurisdiction as

may be provided by law." Const., art. VI, sec. 2. Construing that section, we have heretofore consistently refused to assume original jurisdiction in equity cases where an injunction was sought as the main or principal remedy. The only exceptions to this rule are the suits brought to enforce anti-trust laws, and the express cases mentioned in the majority opinion. Those cases were properly brought and prosecuted by the state as the party plaintiff, and in all of them the property rights of the citizens of the state generally were directly involved, and it clearly appeared in all of them that in no other way could those rights be conserved and protected. It is therefore clear that those cases were within the rule announced by Judge Brewer in the *Debs* case, which is so often referred to in the majority opinion. It is perfectly apparent, however, that this is a suit brought for the sole purpose of enforcing our criminal law by enjoining the defendant from violating the provisions of chapter 50 of the Compiled Statutes entitled "Liquors," and commonly called the "Slocumb law." To say that this court has original jurisdiction in all civil actions in which the state is a party, and the state is a party to this action, therefore this court has original jurisdiction to entertain it, is reasoning in a circle, so to speak. If this were the rule, it would require us to take jurisdiction of all civil actions brought to prevent the violation of any of the provisions of our criminal code, for in all such cases the state would necessarily be the party. It was never intended that this court should have original jurisdiction in every civil case where the state could be made a party plaintiff. It seems clear that that provision applies only to those cases where the state really and in fact has such an interest as entitles it to substantial relief, either by way of protecting its property or the property and rights of its citizens generally. It is worse than idle to assert, in order to assume jurisdiction, that the sale of malt, spirituous or vinous liquors, to be served to the patrons of the defendant's railroad with their meals in its dining cars, constitutes a public nuisance, for no

citizen of the state is injured thereby, either in his person or his property. It cannot be truthfully asserted that violations of the provisions of our liquor laws by the defendant cannot be punished and the laws properly enforced by the usual and ordinary method of criminal prosecutions. Such prosecutions furnish a full, complete and adequate remedy for the evils of which complaint is made. It is well known that defendant's through trains all stop a reasonable length of time at every county seat upon its lines of railroad in this state. Any one who desires to do so may enter the defendant's dining cars at meal times and obtain the necessary evidence to sustain all needful criminal prosecutions. Therefore no necessity exists for the interposition of a court of equity, or the allowance of an order of injunction. As a matter of fact, the plaintiff's petition in this case, when stripped of the specious argument which it contains to induce us to assume original jurisdiction, simply presents a suit in equity to enjoin the violations of the liquor laws of this state, and substitute for the penalties provided therein for their violation such punishments as we may see fit to administer in contempt proceedings.

Finally, if injunction is the proper method of enforcing our criminal law, suits to that end should be commenced in the district courts of this state, which are courts of general and not special or limited jurisdiction. Those courts are open at all times, and have full power to grant all necessary relief, and from judgments there rendered appeals may be taken to this court. If that method is pursued, no question as to our jurisdiction would arise. By requiring such actions to be commenced and prosecuted in the district court, we would be able to devote more of our time to the hearing of the many cases brought here by appeal, and thus conserve the main purpose for which this court was created. This would also, in a measure, relieve the overcrowded condition of our docket.

For the foregoing reasons, among others, I am of opinion that the demurrer to the jurisdiction should be sustained and the proceeding dismissed.