STATE OF IOWA, Appellee, v. G. E. FRAY, Appellant.

No. 41274.

MARCH 8, 1932.

54

■■■■■■■    ■■■■■■
■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■

Chas. C. Heninger and F. M. Beatty, for appellant.

John Fletcher, Gerald O. Blake, and Edwin Willcockson, for appellee.

EVANS, J.—The allegation that the defendant was practising medicine without a license, is admitted by the defendant.

His defense is predicated purely on legal ground. The defendant devotes some argument to the broad proposition that equity has no criminal jurisdiction, and that in any event a court of equity will not award an injunction if the complainant has an adequate remedy at law. The complete answer to this line of argument is that this procedure is statutory and is authorized by the express terms of the statute. Unless, therefore, the statute be for some reason invalid, the right of the plaintiff to maintain the action is undebatable. The appellant recognizes the force of this argument and meets it by challenging the constitutionality of the statute. Such is the ultimate, and indeed the only, defense presented herein. Section 2519 provides:

"2519. *Injunction against illegal practice.* Any person engaging in any business or in the practice of any profession for which a license is required by this title without such license may be restrained by permanent injunction."

The infirmity charged against it is that it is penal; that it provides a punishment for its violation; that this procedure is the equivalent of a prosecution thereunder; that the practical effect of this procedure is to deprive the defendant of a jury trial, and thereby deprives him of due process of law. The following quotation from appellant's brief indicates concisely his general theory of defense:

"Title VIII of the 1927 Code, known as the 'Practice Acts,' contemplates that one who seeks to practice medicine, regardless of his qualifications so to do, must first obtain a license, and the practice of medicine without such license is by express statute, Code Section 2522, made punishable by both fine and

imprisonment; therefore, the act of practicing medicine without such a license is criminal. We assume that no argument will be required to convince this Court that the penalties prescribed by Section 2522 could be imposed only in a Court of law, under the procedure known to such Court. If such be the fact, then how can the same act, criminal in character, be punishable in two different, distinct ways, and by two different, distinct methods of procedure? If Sections 2519 and 2522 are to be reconciled, then a single act may result in a double procedure, one in the criminal Court, to impose the penalty, one in the equity Court, to restrain the commission of an act long since fully consummated. The fallacy of such a procedure becomes apparent.''

As will presently be made to appear, the question thus raised by the appellant has been necessarily involved in many of our previous cases and has been taken for granted therein without challenge either by counsel or by ourselves. The justification for such an attitude in our own cases may be readily found in many decisions of other courts, wherein the question has been raised, argued, and settled. Many of these cases from other jurisdictions are cited in the brief for the State. We shall content ourselves with two or three quotations from as many cases from other jurisdictions, which are cited in the brief of the appellee.

The case of Board of Medical Examiners v. Blair, 196 Pac. 221 (Utah), involved statutory procedure under a statute that was a fair equivalent of our statute, Section 2519. We quote therefrom:

''Comp. Laws Utah 1917, Section 4451, being one of the sections of the chapter creating the Board of Medical Examiners and defining what shall constitute the practice of medicine, makes the practice of medicine, surgery, or obstetrics within the state without a license a misdemeanor and provides a penalty therefore. It is therefore contended that one charged with a violation of that section is entitled to a trial by jury; that authorizing the court to enjoin the practice of medicine as set out in section 4449, supra, is an indirect way of enforcing a penal statute, and that therefore the defendant in this case was entitled to a jury trial; that jury trials are guaranteed to defendants in all criminal prosecutions by article 1, section 12, of

the state Constitution. It is further insisted that the result or effect of a judgment enjoining the practice of medicine would lead to contempt proceedings if violated and would result, or might result, in the imprisonment of the defendant. It is also urged that courts will not enjoin the threatened commission of a crime, and that such proceedings are unknown to the common law. It may be conceded that the power to enjoin the threatened commission of ordinary crimes has never been recognized by the courts. But we are here dealing with the right or power of the Legislature to enact and to provide means for the enforcement of regulations looking to the health of the community. If no other or worse results would or could follow the violation of the penal provisions of a statute than the arrest and punishment of any one violating such provisions, it might well be that the Legislature would not have the authority to provide a remedy by injunction. As indicated, the statute was enacted, not to provide a means of punishing those violating its provisions, but to protect the community from what, in the judgment of the Legislature, was or might be detrimental to the public health. The power of the Court, while not often called into force, to prevent such an injury, has been repeatedly recognized in the decisions of the courts of this country.''

The case of New Orleans v. Liberty Shop, 157 La. 26, 40 A. L. R. 1136, 1149, was a similar case. We quote from the opinion:

'' 'The criminality of the act, it is said, neither gives nor ousts jurisdiction in chancery. Especially are the foregoing principles applicable where a statute on which the suit is based contains a provision for its enforcement by injunction. In granting the injunction, the court acts solely for the purpose of protecting property rights from damage, and in no way interferes with the enforcement of the criminal laws. The remedy given is purely preventive; defendant is not punished for what he has done; this is left to the criminal courts. * * * Where an injunction is necessary for the protection of public rights, property or welfare, the criminality of the acts complained of does not bar the remedy by injunction.' ''

From the State Board of Dental Examiners v. Payne, 281 S. W. (Ky.) 188, we quote:

"Moreover, we are unable to see why the remedy would prevail in cases where purely property rights are involved and withheld in cases where health, and possibly life, is involved, since to hazard the latter is as much a nuisance as it is to imperil and impair the former, even if we were compelled to place the grounds of our decision upon the right of the commonwealth to abate a nuisance. But we are not convinced that the right to maintain this action rests solely upon that ground. The statute involved here is not purely a criminal one. It was enacted, as we have seen, under the police power of the state and in furtherance of a wholesome public policy. The purpose was not to create a crime, but to provide for the public welfare. The criminal feature was only intended as a deterrent and a partial restraint, and was inserted for the purpose of admonishing the practitioner that he must comply with the salutary terms of the statute and which compliance was the chief purpose in enacting the statute, the penal section being merely incidental and collateral thereto; hence the board, by the express terms of the statute, was given power to *enforce* its provisions. Manifestly the Legislature did not intend to limit the means of enforcement to the small and insignificant penalty provided in section 18 (section 2636-18) of the act. The board could make little progress towards enforcing the act, if it was confined to prosecutions to recover the small penalties. If an arrest was made and the highest penalty administered, the practice could be resumed, and, perhaps, many times the amount of the penalty could be collected from ignorant and confiding patrons until the second violation was discovered, if at all, and in the meantime the mischief intended to be prevented would continue unabated. We therefore conclude that the Legislature, in enacting the statute, intended to confer upon the board the right and the authority, as well as the duty, to see to it that no one practiced dentistry in the commonwealth without first obtaining the required license, and that it was therefore granted the privilege of employing whatever legal process was necessary for that purpose; and in this respect the case is different from other cases wherein the remedy was disallowed. It is freely admitted that equity will not enjoin the commission of a crime as such, as, for instance, it will not enjoin one from carrying concealed deadly weapons or from committing any other crime whether it be a

felony or misdemeanor, where nothing else is involved except the commission of the crime; but, where the chief purpose of the statute is to provide for the public welfare by regulating (not prohibiting) some already lawful calling and only provides a penalty for refusing to comply with such regulations, and which penalty is enacted as a punishment for such refusal, we can discover no logical reason why a court, in administering the laws of its jurisdiction, would be powerless to *prevent* the doing of the prohibited act merely because a penalty (only nominal in this case) is attached for a refusal to comply with the regulation.''

More than a score of like cases are cited in the brief of appellee in support of the foregoing discussion. State v. Chicago, B. & Q. R. Co., 88 Neb. 669, 130 N. W. 295; Attorney General v. Railroads Companies, 35 Wis. 425, 522, 535, 552; In re Debs, 158 U. S. 564, 39 L. Ed. 1092; State ex rel. Crow v. Canty, 207 Mo. 439, 105 S. W. 1078, 15 L. R. A. (N. S.) 747; Commonwealth v. McGovern, 116 Ky. 212, 237, 66 L. R. A. 280, 75 S. W. 261, 266; Columbian Athletic Club v. State, 143 Ind. 98, 28 L. R. A. 727, 40 N. E. 914; State ex rel. Sheets v. Hobart, 8 Ohio N. P. 246; State ex rel. Vance v. Crawford, 28 Kan. 726; Walker v. McNelly, 121 Ga. 114, 48 S. E. 718; People v. Truckee Co., 116 Cal. 397, 39 L. R. A. 581, 48 Pac. 374; State ex rel. Rucker v. Feitz, 174 Mo. Appl. 456, 160 S. W. 585; Grand Rapids Board of Health v. Vink, 151 N. W. 672; People v. Tool, 35 Colo. 225, 6 L. R. A. (N. S.) 822; State v. Howat, 109 Kan. 376, 198 Pac. 686, 25 A. L. R. 1210; State ex rel. Lyon v. City Club (S. C.), 65 S. E. 730; State ex rel. Lyon v. Columbia Water Power Co., 82 So. Carolina 181, 22 L. R. A. (N. S.) 435, 63 S. E. 884; Commonwealth ex rel. Breathitt v. Respass, (Ky.) 115 S. W. 1131, 21 L. R. A. (N. S.) 836; Barrett v. Cemetery, 159 Ill. 385, 31 L. R. A. 109.

No case to the contrary is cited in either brief. We find no case to the contrary. We see nothing to be gained by adding argument to argument. In State v. Baker, 212 Iowa 571, we enjoined the defendant under Section 2519. The question here raised was taken for granted by the parties in that case. Such was the situation also in State ex rel. Missildine v. Jewett Market Co., 209 Iowa 567. A like situation was present in State v.

Bailey Dental Company, 211 Iowa 781. We have applied the same rule in the domain of highway legislation and have sustained the right of the Railway Commissioners of the State to enjoin the use of the highway by an unlicensed truck owner. State ex rel. v. Holdcroft, 207 Iowa 564.

We have other analogous statutes relating to sales of foods, and of drugs, and to the operation of hotels and to other regulated uses, wherein the equitable remedy of injunction is provided as an aid to enforcement. For illustration, see Code Sections 2855, 3046, 7874, and 7883.

In the Holdcroft case, we held under Sections 7874 and 7883, as amended by Section 2 of Chapter 5 of 41 G. A., that power was thereby conferred upon the Railroad Commission to maintain suits to enjoin both railroad carriers and motor carriers from operating their vehicles in violation of the regulations of the Railroad Commission, and this notwithstanding that such violations were punishable under the statute by fines and imprisonment. This holding is definitely adverse to the contention of the appellant. It is strictly in line with the authorities herein cited.

Some stress is laid by appellant upon the fact that the illegal acts charged against the defendant were all in the past, and that therefore the criminal offense, if any, was complete, and subject to prosecution and statutory penalty; and that the complaint does not show any threatened act in the future.

The complaint is drawn in the present tense. Such is the form of the statute. The complaint speaks as of the date of its filing, and continues to speak until the date of the decree. The purpose and effect of the injunction are to stop an alleged existing practice. When such existing practice is established, it will be presumed to be in accord with the intent of the perpetrator, and the practice and the intent will be presumed to continue until the contrary is made to appear. This is particularly so if the existing practice is in the nature of a nuisance and is a wilful violation of law. The statutory right to an injunction in such case is not conditioned upon future threats. The plaintiff is entitled to the injunction upon a showing of the existing practice; and this is so even though the defendant should suddenly desist, and should profess repentance and a purpose to desist for the future. Fisher v. Skoglund, 155 Iowa 440; Danner v.

Hotz, 74 Iowa 389; Halfman v. Spreen, 75 Iowa 309; Donnelly v. Smith, 128 Iowa 257; Sawyer v. Botti, 147 Iowa 453; Drummond v. Drug Co., 133 Iowa 266; Barber v. Buonanni Co., 179 Iowa 642.

The fact that under the rule in general equity practice, writs of injunction will ordinarily issue only to restrain threatened injury, is not controlling upon the statutory procedure herein involved. The use of the present tense in the allegations of the complaint herein involved, is in accord with the form of the complaints in each of our previous cases herein above cited.

In a word, the complaint conforms to the statute which expressly provides the injunctional remedy. The procedure is not governed by the general rule of chancery practice.

The judgment below is accordingly affirmed.

MORLING, FAVILLE, DE GRAFF, and ALBERT, JJ., concur.

STEVENS, J., concurs in result.

KINDIG and GRIMM, JJ., dissent in part.

WAGNER, C. J., not participating.

GRIMM, J. (dissenting)—I do not think the plaintiff's petition is sufficient.

Justice KINDIG joins in this dissent.