**CITY OF OTTUMWA, Appellee,**

v.

**Twyla G. HILL, Individually, and Fred Hill, Individually, and as Conservator for the Property of Twyla G. Hill, Appellants.**

No. 95–1204.

Supreme Court of Iowa.

July 23, 1997.

Patrick F. Curran of Vinyard & Curran, Ottumwa, for appellants.

R.E. Breckenridge of Johnson, Hester, Walter & Harrison, L.L.P., Ottumwa, for appellee.

Considered by LARSON, P.J., and CARTER, SNELL, ANDREASEN, and TERNUS, JJ.

LARSON, Justice.

This appeal arises out of a suit by the City of Ottumwa to enjoin the operation of a junkyard by Twyla Hill and Fred Hill (collectively Hill). The district court allowed the city to collect its costs for towing and storing several of Hill's junk vehicles, which constituted a nuisance under Ottumwa's ordinances. The court, however, denied the city's petition to permanently enjoin the operation of the junkyard. Hill appealed, and the city cross-appealed. The court of appeals reversed the allowance of costs to the city and affirmed the denial of the injunction. We vacate the court of appeals decision and affirm the district court on both appeals.

In 1957 the city annexed property now known as 1002 Harvey Street on which the Hills and their predecessors have operated a junkyard since the 1940s. When the area was annexed by the city as a residential area, the junkyard continued to operate as a nonconforming use. In 1988 Hill and the city signed an agreement that granted Hill a variance to allow him to expand his nonconforming use. This agreement provided in part:

2. The junkyard shall not be expanded beyond its current limits as of the date of this document, as shown on the attached map.

3. The area may be used only for salvage operations and for uses secondary and completely incidental to salvage operations.

4. The entire junkyard area shall be properly fenced, according to code specifications, at all times.

5. The junkyard area shall comply with all codes at all times.

6. If, in the future, we desire to expand the area of the junkyard, the office of the zoning administrator shall be contacted prior to any such expansion. Such expansion shall be undertaken only if it is in total compliance with local zoning codes.

7. We understand that the granting of this variance # 346 does not represent any permission to violate the zoning ordinance now or in the future, and that the City of Ottumwa will use every available legal means to halt and curtail any zoning violations.

Soon after the execution of this agreement, Hill began to violate the city ordinances by expanding the operation of the junkyard beyond the parameters approved in the agreement. The city sent frequent written notices through its health department, stating that the junkyard was in violation of the city's ordinances and therefore a nuisance. The notices stated that if Hill failed to comply with the ordinances the vehicles would be removed at Hill's expense. When Hill failed to comply, the city obtained an administrative search warrant, seized thirty vehicles, and towed them to a storage facility. The city notified Hill that, unless he paid the costs of towing and storing, he would lose all rights in the vehicles.

On June 2, 1994, the city filed a "petition for declaratory judgment injunction" to enjoin the operation of Hill's junkyard. On August 1, 1994, Hill obtained a temporary injunction to restrain the city's disposition of the vehicles, and presumably the city still has custody of them. The district court, in June 1995, ordered Hill to pay the towing and storage costs or lose all rights in the vehicles, pursuant to the city's ordinances. It also enjoined Hill from any future operations of the business that would violate the ordinances or variance agreement.

## I. *The Ordinances.*

Under Ottumwa ordinance section 24½—10 pertaining to junk vehicles, the city is to notify the owner that (1) the vehicle constitutes a nuisance, (2) the owner must remove or repair the vehicle, and (3) failure to comply "will be sufficient cause for its removal by the city at the owner's cost."

Section 24½—11 provides that, within ten days after receipt of this notice, the owner shall remove the vehicle or repair its defects and provide a current license for it. Section 24½—12 provides that, if the owner fails to comply with section 24½—10, the city health department shall abate the nuisance "by causing the motor vehicle to be removed and impounded and sold or disposed of as specified [under an ordinance relating to abandoned vehicles] and the cost of abatement shall be charged to the owner . . . ."

Section 24½—14 provides that failure to remove or repair a junk vehicle constitutes a simple misdemeanor punishable by thirty days in jail or a fine not exceeding $100.

## II. *The Removal Costs.*

■ Hill contends that the court erred in allowing the city to collect these costs in the injunction action because the city's only means of reimbursement is through a restitution order in a criminal prosecution. (Hill was charged with misdemeanor violations of these ordinances, but his brief states that the criminal charges were still pending at the time of this appeal.) However, ordinance section 24½—12, set out above, provides that the city may demand reimbursement of its towing and storing costs as a part of the abatement process.

Our statutes give broad powers to a city to collect the costs of a nuisance abatement. For example, Iowa Code section 364.12(3)(h) (1993) provides that, if a property owner does not perform an action required under this subsection (which includes the abatement of a nuisance), the city may do so and assess the costs for collection in the same manner as a property tax. Under Iowa Code section 364.12(4),

[i]n addition to any other remedy provided by law, a city may also seek reimbursement for costs incurred in performing any act authorized by this section by a civil action for damages against a property owner.

The city did not utilize either of these procedures; rather, it used a method provided by its ordinance, which requires the payment of costs as a condition precedent to a return of the vehicles or the city's disposal of them. This procedure, we believe, is authorized by Iowa Code section 364.12(3), which provides:

■■ A city may:

*a.* Require the abatement of a nuisance, public or private, in any reasonable manner.

The city's demand for payment of its costs as a condition precedent to either a return of the vehicle or the city's disposal of it is "reasonable" under the provisions of section 364.12(3). Moreover, the city's use of a civil remedy is not, as argued by Hill, precluded by the fact that the ordinances make a junkyard violation a misdemeanor. A city may pursue its civil remedy of injunction as a preventative measure despite the fact that the ordinance on which it is based is couched in penal terms.

We have said that "a court of equity will enjoin the violation of the provisions of a statute enacted for the public interest though the violation is made a misdemeanor." *Town of Grundy Center v. Marion,* 231 Iowa 425, 431, 1 N.W.2d 677, 680 (1942) (junk dealer nuisance case) (citing *State v. Fray,* 214 Iowa 53, 56, 241 N.W. 663, 664 (1932)). In *Fray* we quoted a Louisiana case that said:

The remedy given [an injunction] is purely preventative; defendant is not punished for what he has done; this is left to the criminal courts. . . . Where an injunction is necessary for the protection of public rights, property or welfare, the criminality of the act complained of does not bar the remedy by injunction.

214 Iowa at 56, 241 N.W. at 664. In *Grundy Center* we concluded that the only effective relief from a nuisance is its abatement and "it is too clear to require discussion that a criminal prosecution is not an adequate remedy at law." 231 Iowa at 432, 1 N.W.2d at

680. Our statutes now recognize this principle; Iowa Code section 701.10 provides:

The fact that one may be subjected to a criminal prosecution in no way limits the right which anyone may have to a civil remedy.

We reject Hill's argument that the city must seek reimbursement through a criminal case.

### III. *The Injunction.*

■ The district court did not permanently enjoin the operation of the junkyard as the city had requested. However, the court required Hill to operate the junkyard within the city's ordinances and the variance agreement, ruling that the

defendants are enjoined from violating the terms of the variance agreement from the date of this ruling. Furthermore, defendants are ordered to store all junk motor vehicles, as defined by Ottumwa Code section 24½—2(2), behind the fenced junkyard area. Junk motor vehicles meeting this definition shall not be stored in the auto sales area. Defendants are also ordered to maintain records of all purchases and sales by the junk dealership as required by Ottumwa Code, Article III, section 22—52 from the date of this ruling....

Defendants are also ordered to store any of these vehicles which constitute junk motor vehicles, as defined by section 24½—2(2), behind the fence in the junkyard portion of the property.

We agree that a permanent injunction is not warranted under the circumstances. This limited injunction requires Hill to abide by the city's ordinances and, of course, might subject Hill to contempt if he fails to do so. Health department inspections just prior to trial showed Hill to be in full compliance with the city's ordinances, and a permanent injunction under these circumstances would be more punitive than remedial.

### IV. *Disposition.*

We vacate the court of appeals decision. We affirm the district court's order requiring Hill to pay the costs of removing and storing the vehicles but remand for a determination of any additional costs accrued during the pendency of this action. If Hill fails to pay these costs within the time provided by the city's ordinances, the city may proceed to dispose of the vehicles as provided in the ordinances. We affirm the injunction as imposed by the district court.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED ON BOTH APPEALS AND CASE REMANDED.**