STATE OF NEBRASKA, APPELLANT, V. ETHEL THRALL MALTBY, APPELLEE.

FILED MAY 6, 1922. No. 22030.

1. Injunction: CRIMINAL ACTS. Where acts complained of are violations of the criminal law, courts of equity will not on that ground alone interfere by injunction to prevent their commission, as they will not exercise their powers for the purpose of enforcing criminal laws by restraining criminal acts.

2. Nuisance: INJUNCTION. A court of equity may, at the instance of properly constituted authority, issue an injunction in the case of a public nuisance, when its issuance will give more complete relief than can be afforded in a court of law.

3. Injunction: CHIROPRACTORS: PRACTICING WITHOUT LICENSE. A suit in equity brought by the attorney general on behalf of the state to enjoin a chiropractor from practicing her profession without a license is not maintainable. Held, that the punishment of the offender for the violation of such laws is solely by criminal action; a complete and adequate remedy being afforded by the courts of law.

4. ———: CRIMES: INADEQUATE PENALTIES. If the penalty for any crime seems to be inadequate, equity will not, for that reason, interfere, for the relief must come from the lawmaking power, and not by extending equity into a field foreign to its purposes.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*Clarence A. Davis, Attorney General,* and *Alfred C. Munger,* for appellant.

*Hotz & Lee, contra.*

*Frank E. Edgerton, amicus curiæ.*

Heard before MORRISSEY, C. J., ROSE, ALDRICH and FLANSBURG, JJ., HOBART and PAINE, District Judges.

PAINE, District Judge.

This is a suit in equity brought by the state of Nebraska, through its attorney general, to enjoin Ethel Thrall Maltby, defendant, from maintaining a public office in the city of Omaha in which she gives chiropractic treatments and administers and prescribes drugs to her patients without first having obtained a license. A temporary injunction was granted by the district court for Douglas county, but later a demurrer was sustained and a permanent injunction denied, and the plaintiff electing to stand upon its demurrer, the case was thereupon dismissed, from which order the state of Nebraska plaintiff appeals to this court.

The petition may be briefly summarized as follows: That the defendant is a resident of and doing business and maintaining an office in the Elks Building in Omaha, Nebraska; that she has for more than two years there maintained an office in which she has engaged in the practice of chiropractic; that this profession consists in the treatment of diseases or ills of the human body by adjustment by hand of the vertebræ of the spine; that chapter 197, Laws 1915, requires that persons desiring to engage in chiropractic shall first pass an examination and secure a license, without which no person is permitted to practice chiropractic in this state; that defendant has failed refused and neglected to submit herself to such examination or to procure the required license; that during said time she has falsely represented herself to be a qualified.

licensed chiropractor, and has used the title "D. C." mean-
ing Doctor of Chiropractic, to induce any and all persons
to submit their bodies to her manipulation · and adjust-
ments; that the laws dealing with said practice were en-
acted for the protection of the health and welfare of the
people, and designed to prevent ignorant and unskilled
persons without proper knowledge of anatomy to make the
adjustments which, it is claimed, will relieve the pressure
on the nerves, and so allow nature's nerve energy to flow
freely to and from the brain; that the lives of the public
were endangered by quacks and charlatans who were prac-
ticing upon the bodies of men, women and children, with·
out proper qualifications, thereby constituting themselves
public nuisances; that the state board of chiropractic or-
ganized under the above law of 1915 has at all times been
willing and ready to examine all applicants for licenses;
that said board has frequently notified this defendant
that she was violating the law and endangering the health
and welfare of the people of Nebraska; that she has also
been notified by the department of public welfare as well
as by the attorney general's department of this state that
unless she obtained a license a criminal complaint would
be filed against her; but that in open disregard thereof
she has openly, publicly, persistently, intentionally and
continuously refused to obey the law, and has publicly
stated upon many occasions that she would disregard any
criminal prosecutions filed against her for so practicing
without a license, and was certain she would be acquitted
if arrested and tried, and that she would continue to prac-
tice chiropractic even though one or more criminal prose-
cutions should be brought against her; that, in addition
to the above, she has been guilty during all of said times of
practicing medicine by administering and prescribing
drugs to her patients, all without a license; that by such
acts she has become a public nuisance, detrimental to the
public welfare, dangerous to public health, against public
policy, and contrary to the laws of the state of Nebraska;
that such acts and practice on the part of the defendant

State v. Maltby.

constitute an open and continuous public nuisance in the city of Omaha, which cannot be stopped or abated except by an injunctive order of a court of equity, and that plaintiff is without an adequate remedy at law, or means whereby the open, continuous, persistent and repeated violations of the law may be prevented and the health and welfare of the public protected and conserved. Following these and many other allegations of the petition, there was a prayer in apt language asking that a temporary injunction be granted, and that upon a final hearing a permanent injunction should restrain Ethel Thrall Maltby, defendant, from continuing to practice chiropractic medicine in Douglas county without first procuring a license as provided by law.

It may aid in discussing the questions at issue to define the term involved herein. Chiropractic is a system of healing that treats disease by manipulation of the spinal column. There are three general classes of healing at the present time: (1) Medical, as followed by the general and ordinary physicians and surgeons. (2) Mechanical, as employed in osteopathy and chiropractic. (3) Mental healing, as taught by Christian Science and other sects.

The main question presented in this case is: Shall an injunction be granted to enforce the provisions of a criminal statute? Our law books are full of instances in which the same offense gives rise to a civil action and also to a criminal prosecution. In this case the petition recites facts which, taken as true for the purposes of this demurrer, show that the law relating to chropractic is being flagrantly violated at the office of the defendant in the city of Omaha, and the state maintains that such an office may be enjoined as a public nuisance affecting the health, morals or safety of the community. "In early times the English court of chancery, not without much protest on the part of common law courts, occasionally issued injunctions to restrain the commission of certain criminal acts. * * * It is now the rule that, where acts complained of are violations of the criminal law, courts of equity will not

on that ground alone interfere by injunction to prevent their commission, as they will not exercise their powers for the purpose of enforcing criminal laws by restraining criminal acts." 14 R. C. L. 376, sec. 78. However, in the case of public nuisances, an exception to this general rule seems to be well recognized; "it being held that, though such a nuisance is indictable, yet a court of equity may, at the instance of the properly constituted public authority, issue an injunction as giving more effectual and complete relief than can be afforded in a court of law." 14 R. C. L. 379, sec. 80. Examples of injunctions against public nuisances may be cited, such as an injunction from using a building to conduct an illegal prize fight in the case of *Columbian Athletic Club v. State,* 143 Ind. 98, 52 Am. St. Rep. 407; and the three cases combined in *Respass v. Commonwealth,* 131 Ky. 807, 21 L. R. A. n. s. 836, deciding that gambling houses or poolrooms where money was to be bet on horse races are public nuisances.· Injunctions have also been granted to restrain managers of a lottery from proceeding with further drawings (*State v. Maury,* 2 Del. Ch. 141) ; and to restrain the pollution of a stream by draining water from a cemetery into it, which was also a crime (*Barrett v. Greenwood Cemetery Ass'n,* 159 Ill. 385, 31 L. R. A. 109).·

In the case of *Beisel v. Crosby,* 104 Neb. 643, this court enjoined an undertaker from conducting a funeral home in an exclusively residential district of the city of Omaha for the reason that no relief the law afforded would remedy the wrong that was threatened.

Judge Sedgwick in *State v. Chicago, B. & Q. R. Co.,* 88 Neb. 669, 34 L. R. A. n. s. 250, says: "The repeated, continuous and persistent violations of the statutes are what make them nuisances, independent of the express terms of the statute declaring them to be such. Indeed, we would think that every place where a public statute is openly, publicly, repeatedly, continuously, persistently and intentionally violated is a public nuisance."

The attorney general contends that under this defini-

tion the practice of chiropractic by the defendant is a
public nuisance. It is illuminating to note that the defini-
tion relied upon was taken from the case of *State v. Craw-
ford,* 28 Kan. 726, 42 Am. Rep. 182, and was not given as
a rule for equity courts to follow, but was founded upon
a Kansas statute, in force since 1859, in which the legis-
lature had declared that all places where intoxicating
liquors were sold in violation of law were common nui-
sances and should be shut up and abated as public nui-
sances. And the court finds that, even after giving the
very broad and general definition of public nuisances re-
lied upon in this case, the Kansas court affirmed the lower
court in refusing to grant the injunction prayed for, and
said that keeping such an illegal saloon open may not be
enjoined in a court of equity.

The granting of the injunction in the case of *State v.
Chicago, B. & Q. R. Co., supra,* was necessary, because
the attempt to stop the serving of liquor on dining cars by
criminal arrest of each participant therein would be im-
possible, especially in those counties where stops were in-
frequently made, and would result, not only in a multi-
plicity of suits, but might in the end be entirely futile and
ineffectual; while in the case at bar there is but one indi-
vidual offender who, it is alleged, has defied the law and
threatens to continue to violate the law, even though com-
plaints are filed against her.

The cases examined thus far have all involved the mis-
use of buildings or property or dining cars, and do not es-
tablish any precedent for the use of an injunction against
one woman who fails to follow the law requiring chiroprac-
tors to be examined and licensed. When new schools of
practice come into existence, their adherents are not quali-
fied to pass the examinations by boards already established.
Failing to be licensed under existing laws, their followers
must prevail upon the legislature to legalize their particu-
lar mode of practice or they can be arrested and punished.
In response to such a call the legislature in 1915 passed a
law licensing chiropractors and providing a fine of $200

and imprisonment up to one year in the county jail, or both, for failure to be examined and secure a license. In 1919 the legislature saw fit to amend this law as found in chapter 190, and cut the punishment provided to a fine of not to exceed $100, or by imprisonment of not to exceed three months.

Our attention has been called to a decision by the supreme court of Illinois which involves the exact point at issue. The attorney general and other state officers of that state brought a bill for injunction against an association consisting of 52 chiropractors, alleging conspiracy to defy the laws and continue practicing without a license, and, although many of the members had been arrested and punished with fines, the association protected its members by paying all fines and costs, and all of them continued to practice without a license. That case is much stronger than the case presented to this court, yet that court said: "All the bill alleges appellees to propose to do is to continue to practice without a license, which would be a misdemeanor for which punishment is provided and an adequate remedy at law exists." *People v. Universal Chiropractors' Ass'n*, 302 Ill. 228.

This court finds that the office or residence where a person is practicing chiropractic without a license is not a public nuisance, and neither is such an offender who violates the law in this respect. The statute of Nebraska regulating the practice of chiropractic recognizes such a profession as a legal one and undertakes to regulate it, and such a law is not prohibitive in its provisions, as is a liquor law, and therefore violations of its provisions should be punished by the criminal process, and not by injunction. If the punishment provided is not sufficient, recourse should be had to the legislature, and not to the equity side of the courts.

AFFIRMED.

ROSE, J., dissenting.

Defendant is openly and defiantly practicing chiropractic daily without a license in violation of law.

State v. Maltby.

When the state, for the protection of public health, applies for an injunction to prevent a continuing, public nuisance created by the practice of an unlicensed chiropractor, a court of equity should not abdicate merely because the unlawful acts constituting the nuisance are punishable as misdemeanors.

Misdemeanors committed by an unlicensed chiropractor to an extent amounting to a public nuisance may be enjoined by a court of equity without interfering with the right to jury trials in criminal prosecutions for prior misdemeanors, if such a right exists.

The criminal prosecution of an unlicensed chiropractor who openly defies the public prosecutors and, in spite of law and prosecutions, threatens to continue an unlawful practice amounting to a public nuisance, which, through ignorance and lawlessness, may result in the violation of quarantine regulations and in the spread of epidemics, is not an adequate remedy for the protection of the public. It would be better to abate the nuisance in advance by injunction than to rely on criminal prosecutions after a calamity has befallen the public.

This application of the state for an injunction has an intimate relation to public health and to the laws on that subject. Supplementing the statutes already in existence the legislature, in 1919, prohibited the practice of chiropractic without a license. The qualifications of a practitioner of chiropractic and the conditions of procuring a license are defined by statute. Educational training equivalent to that of a regular high school course of four years is required. An applicant for a license must be a graduate of a chartered chiropractic school after a personal attendance of not less than three terms of nine months each. In addition, an applicant must pass successfully an examination by a public board, and the subjects include "anatomy, physiology, chiropractic, symptomatology, nerve tracing, chiropractic orthopedy, hygiene, principles of chiropractic and adjusting, as taught by chiropractic schools and colleges." Laws 1919, ch. 29, sec. 2.

The court is bound to presume that the lawmakers in adopting these high standards for the practitioners of chiropractic and in legislating for the public health had at hand all the information essential to legislative action.

The branches of learning mentioned indicate that the legislature meant to require the attainments essential to diagnosis for individual and public purposes, including quarantine and the arresting of infectious and contagious diseases. The system of healing by the promiscuous use of the hands on the spinal column and other parts of the human body in ignorance of the subjects of hygiene and diagnosis is condemned by statute. Without the qualifications required by law such a system of healing may become an agency for the spread of epidemics. "Symptomatology," mentioned in the statute, is a branch of pathology relating to the observation and classification of symptoms—a field of knowledge essential to diagnosis. Defendant did not pass the statutory examination on this or any other subject and has not shown that she is qualified to treat diseases according to the system of healing known as "chiropractic" or to protect the public from those who come to her with infectious or contagious diseases. She nevertheless pretends to practice chiropractic in her office in Omaha without a license. The petition so alleges and the allegations are admitted by her demurrer. The state in applying for an injunction to abate the nuisance pleads in the sixth and seventh paragraphs of the petition the following:

"6. That for more than two years last past the defendant has maintained her office as heretofore described and has practiced chiropractic, and that the defendant is still maintaining her said office and practicing chiropractic in violation of law without first securing a license therefor, and has daily throughout said time adjusted the vertebræ of the spines of men, women and children, and she has openly in her said office in the said city of Omaha, Douglas county, Nebraska, and publicly, repeatedly, continuously, persistently and intentionally treated persons chiropractically in direct defiance and contrary to the provisions of

the statutes of the state of Nebraska; that said defendant
has frequently been notified by the state board of chiro-
practic that she was violating the law, and that she was
endangering the health and welfare of the people of the
state of Nebraska by her practice as an unqualified chiro-
practor, but she persistently, intentionally and continu-
ously refuses to submit herself to examination as pro-
vided by law and thereby secure a license and thereby
qualify herself for such practice, and she has continuously,
persistently and intentionally continued her said practice
as chiropractor in said city of Omaha, Nebraska, until
same has become a public nuisance and detrimental to the
public welfare and dangerous to the public health and
contrary to and against public policy, which requires the
examination of those who claim to cure or relieve the ills
of the human body; and that defendant has been notified by
the officers of the department of public welfare for the state
of Nebraska, and by some of the assistants to the attorney
general for the state of Nebraska, that unless she obtained
a license to practice chiropractic medicine, and if she con-
tinued to practice chiropractic medicine without obtaining
such a license, a criminal complaint or complaints would
be filed against her under the laws as aforesaid, and that
defendant has publicly stated a number of times that she
would disregard any criminal prosecutions filed against
her for practicing chiropractic medicine without a license
as aforesaid, and was certain of an acquittal or acquittals,
and would continue to practice chiropractic medicine, not-
withstanding the fact that one or more criminal prosecu-
tions might be pending against her for practicing chiro-
practic medicine without a license.

"7.   That the continuous persistent and intentional vio-
lation of the law in the treatment of the ills of men, women
and children who are attracted to her office in said city
of Omaha, Nebraska, by her advertising herself as a quali-
fied chiropractor without procuring a license so to do from
the statutory authorities, endangers the health of the pub-
lic, defeats public policy of requiring skill and knowledge

on the part of practitioners before they are licensed to practice on the bodies of the people of the state of Nebraska, and it constitutes an open and continuous nuisance in said city of Omaha, Nebraska, that cannot be stopped or abated except by injunctive order made and issued in and by a court of equity."

The statute is by construction a part of the petition. When both are considered they show that defendant is maintaining a public nuisance which should be abated by injunction. *State v. Chicago, B. & Q. R. Co.*, 88 Neb. 669.

The jurisdiction and powers of courts of equity in Nebraska come directly from the Constitution and consequently are not limited by subsequent legislation. *Matteson v. Creighton University*, 105 Neb. 219.

The constitutional "right of trial by jury" is preserved as it existed at common law and under the statutes in force when the Constitution was adopted, but does not necessarily extend to new misdemeanors, like those committed by defendant, for which mere fines and jail sentences only are imposable. *Bell v. State*, 104 Neb. 203.

On the application for an injunction to abate the nuisance, therefore, the court of equity is not hampered by the plea of defendant that she is entitled to a jury trial. When the state goes into a criminal court and charges her with a misdemeanor, the right, if any, which she may have to a jury trial will be protected by that court. The remedy by inflicting punishment for the misdemeanors constituting the nuisance which menaces the public health is inadequate under the petition and statute. Entertaining these views, I am compelled to dissent from the opinion and the judgment of the majority.