STATE EX REL. STEWART, RELATOR, v. DISTRICT COURT
ET AL., RESPONDENTS.

(No. 6,002.)

(Submitted September 22, 1926.    Decided November 8, 1926.)

[251 Pac. 137.]

*Intoxicating Liquor—Conviction—Enjoining Future Offenses—
Statute — Unconstitutionality — Nuisances—Abatement—In-
junction—Nature of Writ—Jurisdiction.*

Injunction—Concept of Equity—Writ will not Issue to Enjoin Crime.
  1.  Injunction is an equitable remedy, and as a general rule a
  court of equity will take no part in the administration of the
  criminal law and may not enjoin either the commission of crimes
  or their prosecution and punishment.
Same—Writ Proper to Enjoin Public Nuisance Although Act a Crime.
  2.  Equity has jurisdiction to abate a nuisance and at the suit
  of the state enjoin a public nuisance although the act consti-
  tuting the nuisance is also a crime.
Same—Power of District Court Exercising Criminal Jurisdiction Im-
  pliedy Denied by Constitution.
  3.  *Held,* that the power of the district court, sitting in the dis-
  charge of its jurisdiction in a criminal case, to exercise powers
  known only to a court of equity is impliedly denied by the letter
  as well as the spirit of the state Constitution.
Intoxicating Liquors—Nuisances—Abatement by Injunction—Power of
  Legislature.
  4.  The legislature may, within the constitutional limits of its
  power, declare any act criminal and make the repetition or con-
  tinuance thereof a public nuisance, so as to enable the courts on
  conviction to pronounce judgment of abatement or to vest in courts
  of equity the power to abate them by injunction, and in enacting
  sections 11066–11069, Revised Codes of 1921, declaring certain acts
  and places with reference to violations of the Prohibition Act
  common nuisances which may be restrained by injunction, and
  providing punishment by means of contempt proceedings, it did not
  transcend its power.
Same—Conviction—Enjoining Future Offenses—Statute—Invalidity.
  5.  *Held,* that the provision of section 11075, Revised Codes of
  1921, as amended by Chapter 116, Laws of 1923, requiring the dis-
  trict court upon conviction of a person for an offense against the
  Prohibition Act to enjoin such person perpetually from thereafter
  violating any of its provisions, is void in so far as it authorizes

  1.  See 10 R. C. L. 342.
  2.  See 10 R. C. L. 342.
  4.  Constitutionality of statute conferring on chancery courts power
to prevent sale of liquor as a nuisance, see note in 5 A. L. R. 474.
See, also, 20 R. C. L. 386; 15 R. C. L. 406.

the issuance of injunction against the commission of offenses not denominated nuisances in the Act, as permitting substitution of a summary trial of the offender by the court in a contempt proceeding, for the trial by jury guaranteed by the Constitution.

[1]    Equity, 21 C. J., sec. 14, p. 36, n. 16; sec. 136, p. 155, n. 28, 29, 30, 31.  Injunctions, 32 C. J., sec. 438, p. 275, n. 9, 10, 11; p. 276, n. 12, 13; sec. 458, p. 287, n. 88.  Intoxicating Liquors, 33 C. J., sec. 399, p. 692, n. 75.
[2]    Injunctions, 32 C. J., sec. 440, p. 277, n. 39, p. 278, n. 41; sec. 458, p. 287, n. 89.  Nuisances, 29 Cyc., p. 1221, n. 40 New.
[3]    Actions, 1 C. J., sec. 8, p. 930, n. 15, 19; p. 931, n. 23.  Courts, 15 C. J., sec. 418, p. 994, n. 7.  Injunctions, 32 C. J., sec. 458, p. 288, n. 93 New.
[4]    Equity, 21 C. J., sec. 136, p. 156, n. 36.  Intoxicating Liquors, 33 C. J., sec. 399, p. 691, n. 66.
[5]    Equity, 21 C. J., sec. 136, p. 156, n. 36.  Injunctions, 32 C. J., sec. 438, p. 275, n. 11; p. 276, n. 15; p. 277, n. 26.  Juries, 35 C. J., sec. 99, p. 194, n. 14; sec. 153, p. 299, n. 74.

Original application by the State, on the relation of Sims Stewart, for a writ of prohibition to the District Court of the Eighteenth Judicial District in and for the County of Hill, and Chas. A. Rose, Judge thereof.  Writ granted.

*Mr. C. A. Spaulding* and *Mr. W. F. O'Leary*, for Relator, submitted an original, and a reply and supplemental, brief and argued the cause orally.

We contend that a court of equity has no authority to enjoin the commission of a crime unless it comes under one of the particular subdivisions of equity jurisdiction, which jurisdiction is the same now as it was at the time of the adoption of the Constitution, which then was that equity courts had the same equity jurisdiction as they had at common law, and at common law equity did not exercise its jurisdiction to prevent the commission of a crime unless it was injurious to property interests or civil rights or a public nuisance and the following cases so hold: *City of New Orleans* v. *Liberty Shop,* 157 La. 26, 101 South. 798; *United States* v. *Seibert,* 2 Fed. (2d) 80; *Vulcan Detinning Co.* v. *St. Claire,* 315 Ill. 40, 145 N. E. 657; *State ex rel.* v. *Howat,* 109 Kan. 376, 25 A. L. R. 1210, 198 Pac. 686; *Kentucky Board of Dental Examiners* v. *Payne,* 213 Ky. 382, 281 S. W. 188; *Healy* v. *Sidone* (N. J.), 127 Atl. 520.

Agreeably to the direction of the court to brief two questions, counsel submits the following:

First Question: "Have the legislative assembly the power to direct the district court upon the conviction of a defendant to issue an injunction prohibiting him from thereafter committing the same, or a similar, or any crime? (a) What, if any, constitutional provision bears upon this question?" In answer to this question we cite: *Puterbaugh* v. *Smith,* 131 Ill. 199, 19 Am. St. Rep. 30, 23 N. E. 428, and *Commonwealth* v. *Dietz,* 285 Pa. 511, 132 Atl. 572. The *Dietz Case* holds that it would be an invasion of the constitutional provision guaranteeing to defendant the right of trial by jury to enjoin a defendant from ever again violating any of the provisions of the Prohibition Act.

Question No. 2. "If the injunction provision of section 11075, Rev. Codes 1921, as amended by Chapter 116, 1923 Session Laws, is valid, is an injunction issued substantially in the words of the statute permissible?" We must answer this question in the affirmative, because if section 11075 as amended by Chapter 116, Laws of 1923, is a valid legislative enactment, then there is no reason why the court cannot with one fell swoop enjoin the commission of any or all offenses against the prohibition law; and furthermore, if this legislative enactment is valid, there is no reason why the legislature cannot enact another law granting to courts a right to issue injunctions against the commission of any offense, or all offenses mentioned in the Penal Code. In fact, there is no limit to what the legislature may do if this legislative enactment is upheld by the court; but the absurdity of such a conclusion is so glaring that a mere statement of the purpose of that enactment defeats its object.

*Mr. L. A. Foot,* Attorney General, *Mr. I. W. Choate,* Assistant Attorney General, and *Mr. A. F. Lamey,* County Attorney of Hill County, submitted an original and a supplemental brief; *Mr. Choate* argued the cause orally.

In enacting the amendment to section 11075, Revised Codes, providing for injunctions in prosecutions for violation of the

liquor laws, was it competent for the legislature to authorize the issuance of an injunction against the commission of crime? The rule is thus stated in 32 C. J., page 275, section 438: "In the earliest period of its history the court of chancery assumed to exercise the power of preventing crimes. But the exercise of this prerogative grew less frequent with advancing civilization as the ordinary remedies for the punishment of crime became more effective and acts of lawlessness and violence less common. It is now universally held that, except where there is express statutory authority therefor, equity has no criminal jurisdiction, and acts or omissions will not be enjoined merely on the ground that they constitute a violation of law and are punishable as crimes." We have in Montana a statute (sec. 11075) which expressly authorizes the issuance of injunctions against one who has been convicted of a violation of the prohibition laws to restrain his further breaking of said laws.

In the case of *Ex parte Allison,* 48 Tex. Cr. Rep. 634, 13 Ann. Cas. 684, 3 L. R. A. (n. s.) 622, 90 S. W. 492, the powers of equity by means of an injunction were invoked against gambling-houses by virtue of an express statute, and it was held that the district court had authority to authorize the issuance of a writ of injunction in such a case, although the effect thereof was to restrain the commission of a crime.

In the case of *State* v. *State Capital Co.,* 24 Okl. 252, 103 Pac. 1021, 1025, the court cited the *Allison Case* and held that, in the absence of a statute authorizing it, an injunction against the commission of a criminal offense would not issue, but the court in that case said: "It is entirely competent for the Législature to create other matters the subject of equitable cognizance than those recognized under the general system of equity."

*Littleton* v. *Fritz,* 65 Iowa, 488, 54 Am. St. Rep. 19, 22 N. W. 641, was an action in a court of equity for the issuance of a writ of injunction against the unlawful selling of intoxicating liquors. It was held that the act was not repugnant to the Constitution, as depriving defendant of the right of trial

by jury, nor as being an attempt by the legislature to enforce
a criminal law by a civil action.

*Eilenbecker* v. *Plymouth County*, 134 U. S. 31, 33 L. Ed.
801, 10 Sup. Ct. Rep. 424 [see, also, Rose's U. S. Notes], was
a case in which the supreme court of the United States re-
viewed a judgment of Plymouth county, Iowa, imposing a
fine and imprisonment as a punishment for contempt in re-
fusing to obey a writ of injunction enjoining the defendants
from selling intoxicating liquors. The court upheld the judg-
ment of the Iowa court.

The cases above cited were prosecutions under nuisance
statutes, declaring that the buildings where liquor was unlaw-
fully manufactured or kept should be deemed public nuisances
and subject to abatement.

Montana has a similar statute (sec. 11066). Under this
statute, not only is the place where intoxicating liquor is
kept in violation of the law a nuisance, but the intoxicating
liquor itself so unlawfully kept and used is likewise made a
nuisance. Hence, it would seem that there is as much reason
why a person should be enjoined on the basis of a nuisance
from violating any of the provisions of the laws of Montana
relating to the manufacture, sale and use of intoxicating liquors,
after having once been convicted for so doing, as there is
for enjoining him from keeping a house or building where
such violation of law occurs. Wholly aside from the nuisance
feature, however, as said by the supreme court of the United
States in the *Eilenbecker Case*, above cited, "it appears to us
that all of the powers of a court may be called into operation
by a legislative body for the purpose of suppressing this ob-
jectionable traffic."

In the recent case of *Kentucky State Board of Dental Ex-
aminers* v. *Payne*, 213 Ky. 382, 281 S. W. 188, the supreme
court of that state upheld a law which authorized enjoining
the practice of dentistry without a license, even though such
an act was also punishable as a crime. A very full discussion
of the general subject of jurisdiction at the instance of the
governmental agency to enjoin an act amounting to a crime

will be found in the case note in 40 A. L. R., commencing at page 1145.

In answer to the first question submitted by the court, we say there is no provision of which we are aware in the Constitution of Montana that prohibits the law-making body from conferring upon the courts authority to enjoin acts constituting the commission of a crime. In the absence of such restriction it seems to us, in view of the general principles laid down by Pomeroy in his work on Equity Jurisprudence (fourth edition), volume 1, section 232, discussing the source of the equitable jurisdiction of American courts, the rule announced in *State* v. *State Capital Co.,* 24 Okl. 252, 103 Pac. 1021, and in section 66, 14 R. C. L., page 366, that it is perfectly competent for the legislature to confer any power it sees fit upon courts of equity in the matter of enjoining the commission of acts regardless of whether such acts are crimes or otherwise.

We have been unable to find any authority dealing with the question as to whether an injunction issued substantially in the words of the statute is permissible. It seems to us that the general rules applicable to injunction orders should govern this question. (But see 32 C. J., p. 367, sec. 619.) In this connection it should be noted that there is authority for the proposition that an injunction issued against a liquor nuisance may be made binding on the defendant throughout the entire judicial district wherein the writ is issued. (See *McGlasson* v. *Johnson,* 86 Iowa, 477, 53 N. W. 267, and other authorities cited in the case note on page 1128, 37 Ann. Cas. 1915C.)

The case of *Puterbaugh* v. *Smith,* 131 Ill. 199, 19 Am. St. Rep. 30, 23 N. E. 428, cited by relator, is not in point upon the present inquiry. The case cited did not involve the question as to the power of a court to enjoin the commission of crime. It concerned only the question of the power of a court to punish for contempt—not for violating an injunction against the commission of crime but for disregarding a subpoena issued by a notary public commanding attendance before him to take a deposition.

The case of *Commonwealth* v. *Dietz*, 285 Pa. 511, 132 Atl. 572, seems to us hardly in point upon the questions submitted by this court. So far as the case goes, however, it lends support to the state's position in the present controversy. The case involved the abatement of a liquor nuisance. The court held that if the legislature validly pronounces a particular state of affairs a nuisance prejudicial to the public health, it may be prohibited by the same remedies as a nuisance at common law. It further held that the Pennsylvania statute which permitted the abatement of liquor nuisances by a suit in equity does not infringe the constitutional right of trial by jury, nor does it interfere with due process of law.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Sims Stewart was convicted of the offenses of unlawfully possessing intoxicating liquor and of unlawfully selling intoxicating liquor, in the district court of Hill county upon the twenty-eighth day of September, 1923. Judgment on the conviction was made and entered against him on October 2, 1923. Eight days later the court issued an injunction order in the cause, addressed to the defendant, giving him notice that whereas he had been convicted upon September 28, 1923, of the offenses of unlawfully possessing intoxicating liquors and unlawfully selling intoxicating liquors, upon which judgment had been pronounced against him, "Now, therefore, you are hereby perpetually enjoined and ordered to refrain from hereafter violating any of the provisions of the laws of the State of Montana, relating to the manufacture, sale and use of intoxicating liquors and from violating any of the provisions of Chapter 29, Part I of the Penal Code of 1921, of the State of Montana, and each and every amendment thereto, including Chapter 116 of the Acts of the Eighteenth Legislative Session of the Legislature of the State of Montana. Done in open court this 10th day of October, 1923." The minimum penalty for each of the offenses named therein was $200 fine

and imprisonment in the county jail for not less than sixty days. (Sec. 11075, as amended by Sess. Laws 1923, p. 287.)

Upon the first day of July, 1926, the county attorney of Hill county filed in the district court of that county an information advising the court of the issuance of the injunction and of the fact that the same was served upon the defendant by the sheriff on October 11, 1923, and that on or about the twelfth day of February, 1926, and on or about the fourteenth day of June, 1926, and on or about the twenty-second day of June, 1926, and on or about the twenty-seventh day of June, 1926, in Hill county, notwithstanding said injunction, the defendant "did then and there unlawfully, knowingly, wilfully and intentionally sell and dispose of certain intoxicating liquors, * * * and that on or about the twenty-seventh day of June, 1926, in Hill county, notwithstanding the injunction, the defendant did then and there unlawfully, knowingly, wilfully and intentionally possess certain intoxicating liquors," which acts were then prohibited and unlawful. Thereupon the court issued a bench-warrant for the defendant pursuant to which he was brought before the court, and upon the court's demand that he enter a plea to the information, he pleaded not guilty. His bond was fixed at $2,000, which he furnished.

It is admitted that the court threatened to try him upon the alleged contempts upon July 16, 1926. Thereupon the defendant applied to this court for an alternative writ of prohibition requiring the district court and its judge to desist and refrain from further proceeding in the cause until the further order of this court, and requiring the court and judge to show cause why they should not be restrained and prohibited from proceeding further in the matter. The application was granted and in response thereto the defendant court and judge have made answer and return. No further recitation of the facts is necessary.

The basis for the injunction order is found in section 11075 as amended. That section provides that any person who manufactures, sells, barters, transports, imports, exports, de-

livers, furnishes or possesses any intoxicating liquor, in violation of any of the laws of the state of Montana, relating to intoxicating liquors, shall be fined and imprisoned, *etc.;* makes it the duty of the prosecuting officer to ascertain whether the defendant has been previously convicted and, if so, to plead the prior conviction; makes provision that a judgment for fine and costs shall be a lien upon the premises where a breach of the law takes place in certain cases, and concludes: "If any person shall be convicted in a criminal action of violating any of the provisions of this Act, an injunction shall be issued perpetually enjoining said person from thereafter violating the provisions of said Act, the same as though a formal application for an injunction had been applied for."

An extended search has not revealed a similar statute. Whether its draftsman took into consideration the fundamental principles which for centuries have called into action and governed the conduct of the strong arm of equity, or whether he had in contemplation the constitutional and statutory provisions adverted to hereafter, we have no way of knowing.

Injunction is an equitable remedy. The issuance of the [1] writ always has been governed by the general principles which control the granting of equitable relief. (14 C. J. 175.) Injunction is "proper only in cases of equitable cognizance." (14 R. C. L. 307.) Aristotle defined the very nature of equity to be the correction of the law, where by reason of its universality it is deficient.

As a general rule a court of equity will take no part in the administration of the criminal law and may not enjoin either the commission of crimes or their prosecution and punishment. The legal remedies for the vindication of the criminal law and the enforcement of the public policy of the state are deemed fully adequate and peculiarly appropriate. (21 C. J. 155.)

Ruling Case Law says it is a universally acknowledged principle that a court of equity has no jurisdiction in matters merely criminal or immoral. It leaves the correction of these matters to the criminal courts. The rule which prevents a

court of chancery from interfering with the administration of the criminal laws of the state is a wise one, founded upon sound principles of public policy. Any other would result in much confusion and embarrassment in preserving peace and order and enforcing the police power of the state generally. (10 R. C. L. 341, 342.)

It is true that in the earliest period of its history the court of chancery assumed to exercise the power of preventing crimes, but this was because the ordinary courts were unable to protect the rights of the poor and weak from the encroachments of the powerful nobles. (32 C. J. 275.) The necessity which impelled the exercise of the power did not long obtain, and in England any jurisdiction which the court of chancery ever had became obsolete long ago. (10 R. C. L. 342.)

"It is elementary that where the primary right of a party is legal in its nature, as distinguished from equitable, and one for which the law affords some remedy, equity does not relieve, if the legal remedy is full and adequate and does complete justice. No principle of equitable jurisdiction is more firmly established than this." (10 Cal. Jur. 463, 464.) "It is now universally held that, except where there is express statutory authority therefor, equity has no criminal jurisdiction and the acts or omissions will not be enjoined merely on the ground that they constitute a violation of law and are punishable as crimes." (32 C. J. 275.)

These principles are crystallized in section 8710, Revised Codes of 1921, which declares: "Neither specific nor preventive relief can be granted to enforce a penal law, except in the case of nuisance, nor to enforce the penalty or forfeiture in any case."

While in the absence of express statutory authority a court [2] of equity will not exercise jurisdiction to prevent the commission of a crime, its jurisdiction to abate a nuisance is undoubted, and it will, at the suit of the state, enjoin a public nuisance although the act constituting the nuisance is also a crime. (10 R. C. L. 342; *State ex rel. Collins* v. *Marshall,* 100 Miss. 626, Ann. Cas. 1914A, 434, 56 South. 792; *In re*

*Wood,* 194 Cal. 49, 227 Pac. 908.)   The criminality of the act neither gives nor ousts jurisdiction in chancery.   (32 C. J. 278.)

The right to enjoin a public nuisance is no new subject of equitable jurisdiction.   (4 Pomeroy's Equity Jurisprudence, 349.)   This power must not be confused with that of the common-law courts exercising criminal jurisdiction to abate a nuisance.   (1 Bishop's Criminal Law, sec. 1079.)   The defendant being found guilty might be required as a part of his sentence to abate the nuisance and if he refused to do so he might again be indicted for continuing it, or he might be compelled to do so by process for contempt, and what is in effect the same thing, the judgment might provide that he stand committed until the nuisance be remedied, in analogy to the practice where a fine is imposed.   (*Id.,* and 2 Bishop's New Criminal Procedure, sec. 868.)   But so far as we are advised, no court in the exercise of its common-law jurisdiction ever assumed the right to issue an injunction, much less a right to do so when exercising its jurisdiction in a criminal case.

Section 11 of Article VIII of our Constitution provides that [3] the district courts shall have original jurisdiction in all cases at law and in equity, with certain limitations, and also in all criminal cases amounting to felony, and in all cases of misdemeanor not otherwise provided for.

As is generally known, prior to the adoption of the Code system the functions of courts of law and courts of chancery were distinct and separate; that dual system, if such it may be termed, was in practice slow, cumbersome and vexatious to a high degree, as well as expensive to litigants.   The creators of the Code system sought to correct these shortcomings in the administration of public justice, and in the language of Mr. Bliss in his work on Code Pleading, section 4, "The first blow given by the system of Code pleading to the common law and equity systems was to abolish names and forms of actions." "The reformed procedure has abolished the distinctions between actions at law and suits in equity, so far as names and forms are concerned, and substituted one form of judicial

procedure known as a civil action.'' (Phillips on Code Pleading, sec. 163.)

Montana adopted the Code with the enactment of the Bannack Laws and has maintained it, with the addition of certain modifications and simplifications, ever since. The distinguished and exceptionally able body of men, among whom were many of Montana's foremost lawyers, who formed our Constitution, wrote into Article VIII, section 28, the provision that ''there shall be one form of civil action, and law and equity may be administered in the same action.'' Note the section refers to a civil action. The idea that equity might be administered in a criminal action was not contemplated, and in the light of legal history the contemplation of such a thing would have been a legal grotesquery.

Our present Code defines civil and criminal actions. ''A civil action is prosecuted by one party against another for the enforcement or protection of a right, or the redress or prevention of a wrong.'' (Sec. 9005, Rev. Codes 1921.) In such action law and equity may be administered. We have said hitherto that ''though the Code has abolished all forms of action, yet the distinctions between the different causes of action still obtain; the reasons underlying them are still the same.'' (*Glass* v. *Basin & Bay State Min. Co.*, 31 Mont. 21, 77 Pac. 302.) ''The distinctions abolished were formal; inherent differences remain.'' (Phillips on Code Pleading, sec. 471.)

''The proceeding by which a party charged with a public offense is accused and brought to trial and punished is known as a criminal action.'' (Sec. 11608, Rev. Codes 1921.)

Section 9007, Revised Codes of 1921, a part of the Civil Code, provides that ''when the violation of a right admits of both a civil and criminal remedy the right to prosecute the one is not merged in the other,'' and the same subject is emphasized in section 10715, a part of the Penal Code, where it is stated: ''The omission to specify or affirm in this Code any liability to damages, penalty, forfeiture, or other remedy imposed by law, and allowed to be recovered or enforced in

any civil action or proceeding, for any act or omission declared punishable herein, does not affect any right to recover or enforce the same.''

Nothing can be clearer than the intention of the framers of our law, constitutional and statutory, to keep civil and criminal remedies in their separate channels, a policy which long experience has proved beneficial to the public weal.

Giving to a court sitting in the discharge of its jurisdiction in a criminal case the right to exercise powers known only to a court of equity would be an innovation not only strange but revolutionary. It is idle to speculate whether the exercise of the power, if granted, would be to open a Pandora's box; suffice it to say that the power is not expressed but impliedly at least is denied by the letter as well as the spirit of the Constitution. The courts specified in the Constitution are those which then were familiar to the people of Montana. Their functions were well understood; such changes as were deemed advisable were made, as for instance, the abolition of probate courts whose functions are reposed in the district courts. No distinction was better understood than that between civil courts and criminal courts and it was intended that distinction should be maintained.

From the language of the sentence in the Act we are [4] considering and from its position in section 11075 it seems to have been the obvious intention that the injunction shall issue from the court and in the action in which the person is convicted. If the acts denounced in the section were denominated nuisances and the powers of a court of equity were called upon in aid of the criminal jurisdiction, a different situation would be presented; but it is not so. The acts are not denominated nuisances. There is here a departure from the theory of the Act of which Chapter 116 is amendatory, and see sections 11123 to 11133, Revised Codes of 1921.

In the Act designed to stamp out the liquor traffic and to put an end to the use of intoxicating liquors as a beverage, the legislature, following closely the provisions of the national Prohibition Act, declared certain acts and places to be common

nuisances. Section 11066 provides in part: "Any room, house, building, boat, vehicle, structure or place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of this Act, and all intoxicating liquor and property kept and used in maintaining the same, is hereby declared to be a common nuisance, and any person who maintains such a common nuisance shall be guilty of a misdemeanor."

The next section (11067) provides in part that "an action to enjoin any nuisance defined in this Act may be brought in the name of the State of Montana by the attorney general of the state or by any county attorney. Such action shall be brought and tried as an action in equity and may be brought in any court having jurisdiction to hear and determine equity cases."

The next section (11068) provides that "any person who shall, with intent to effect a sale of liquor, by himself, his employee, servant, or agent; for himself or any person, company or corporation, keep or carry around on his person, or in a vehicle, or other conveyance whatever, or leave in a place for another to secure, any liquor, or who shall travel to solicit, or solicit, or take, or accept orders for the sale, shipment, or delivery of liquor in violation of this Act, is guilty of a nuisance and may be restrained by injunction, temporary or permanent, from doing or continuing to do any of said acts or things."

The next section (11069) provides the punishment for a violation of these injunctions—contempts of court—to be a fine not less than $200 nor more than $1,000, or imprisonment of not less than thirty days nor more than twelve months, or both such fine and imprisonment.

That the legislature had the power to enact the four sections immediately mentioned is clear. It is competent for the legislature within the constitutional limits of its power to declare any act criminal and make the repetition or continuance thereof a public nuisance so as to enable the courts on conviction to pronounce judgment of abatement or to vest in courts of equity the power to abate them by injunction. (21 C. J. 156;

*Ex parte Allison,* 48 Tex. Cr. App. 634, 13 Ann. Cas. 684,
3 L. R. A. (n. s.) 622, 90 S. W. 492, and cases cited.)

In *Eilenbecker* v. *Plymouth County,* 134 U. S. 31, 33 L. Ed.
801, 10 Sup. Ct. Rep. 424 [see, also, Rose's U. S. Notes], the
supreme court of the United States said: ''If the objection to
the statute is that it authorizes a proceeding in the nature
of a suit in equity to suppress the manufacture and sale of
intoxicating liquors which are by law prohibited, and to abate
the nuisances which the statute declares such acts to be,
wherever carried on, we respond that, so far as at present
advised, it appears to us that all the powers of a court, whether
at common law or in chancery, may be called into operation
by a legislative body for the purpose of suppressing this ob-
jectionable traffic; and we know of no hindrance in the Con-
stitution of the United States to the form of proceedings, or
to the court in which this remedy shall be had. Certainly it
seems to us to be quite as wise to use the processes of the law
and the powers of the court to prevent the evil, as to punish
the offense as a crime after it has been committed.''

If it were possible to construe the provision of section 11075
which we are considering as a call to the aid of equity, irre-
spective of the nuisance feature, still another problem would
be presented.

Has the legislature the right to empower a court of equity
[5] to issue an injunction to prevent the commission of a
crime which is not a nuisance? In a general way the answer
must be in the affirmative. In 5 Pomeroy's Equity Juris-
prudence, section 1894, we find the following: ''While the right
of the government to obtain an injunction to restrain criminal
acts is not confined strictly to cases of nuisance, it would seem
that it should be limited to cases closely analogous. Such re-
lief, if applied to criminal acts in general, would supersede
the criminal law and deprive parties of the right to a jury
trial. Where the property rights of many citizens are in-
volved, it is proper for the government, on their behalf, to
invoke the powers of equity, and it would seem that only in
such a case should the jurisdiction be assumed.''

Violation of the injunction contemplated in section 11075 by the defendant would be a contempt of court, the punishment for which might be greater than the penalty provided for committing the crime. In a contempt proceeding the accused is not entitled to a jury trial.

Would the practical operation of the Act in question serve to deprive a defendant of the right of trial by jury? If so, clearly it would impinge upon that provision of our Constitution which prescribes that in all criminal prosecutions the accused shall have the right to a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed. (Sec. 16, Art. III.)

"One of the dearest rights guarantied by our free Constitution is that of trial by jury," as this court declared in *State* v. *Mott,* 29 Mont. 292, 74 Pac. 728, quoting from *People* v. *Plummer,* 9 Cal. 299. ·

If the word "Act" as employed in the quoted paragraph of the section under consideration refers to Chapter 29 of the Penal Code of the Revised Codes of Montana of 1921, and it is amendatory of that Chapter, then an injunction issued pursuant to and in the language of the paragraph would have an unlimited operation. A person convicted of manufacturing liquor in 1921 might be found guilty of and be punished as for a contempt of court in 1926, for having liquor in his possession, a crime wholly unrelated to that of which he was convicted. Many other similar examples might be cited; he would be guilty of contempt of court if he had committed any crime denounced in Chapter 29, and its amendments. If this is permissible, a statute could be enacted providing that upon the conviction of a person for any crime whatsoever, he shall be enjoined from. ever thereafter breaking any law of this state, failing in which he shall be deemed guilty of a contempt of court. In such case, why bother with a jury? "Government by injunction" with a vengeance would be the inevitable result. This much may certainly be said: In practical operation the statute might easily result in substituting contempt

proceedings for jury trials. Of the truth of this the case before us offers an apt illustration.

No such result follows from the pronouncement of a given act as a public nuisance, punishing the perpetrator for committing the same and enjoining him from repeating it. (*State* v. *Ehrlich*, 65 W. Va. 700, 23 L. R. A. (n. s.) 691, 64 S. E. 935; *Ex parte Allison*, 48 Tex. Cr. App. 634, 13 Ann. Cas. 684, 3 L. R. A. (n. s.) 622, 90 S. W. 492; *Campbell* v. *Peacock* (Tex. Civ. App.), 176 S. W. 774.)

Injunction lies to abate a nuisance although maintaining the nuisance involves a crime; to that extent the strong arm of equity aids in preventing crime. In that case, however, there must be proof of what the law denominates nuisance as distinguished from mere crime. The general rule is that an injunction will not lie to prevent or punish the commission of a crime. It is not any part of the intention of the law that constitutional provisions shall be evaded by substituting a civil for a criminal procedure, or a single judge for a jury. (*State ex rel. Alton* v. *Salley* (Mo.), 215 S. W. 241.)

In *Puterbaugh* v. *Smith,* 131 Ill. 199, 19 Am. St. Rep. 30, 23 N. E. 428, the supreme court of that state said: "No one would pretend that it is competent for the general assembly to enact that the crimes and misdemeanors enumerated in the Criminal Code shall hereafter be contempts of court, and summarily punished as such, and thus deny to the parties accused the right of trial by jury; and this, for the plain reason that the general assembly cannot deny to individuals the guaranteed rights of the Constitution by simply changing the names of things. It cannot make that punishable as a contempt which, in the nature of things, cannot be a contempt of the authority imposing the punishment."

Chief Justice Shaw said, in *Commonwealth* v. *Hunt*, 4 Met. (Mass.) 111, 38 Am. Dec. 346: "The law is not to be hoodwinked by colorable pretenses. It looks at truth and reality through whatever disguise it may assume."

The supreme court of Pennsylvania, in *Commonwealth* v. *Dietz*, 285 Pa. 511, 132 Atl. 572, after affirming the right of

the legislature to pronounce a particular state of affairs a public nuisance, said: "But of course the legislature may not, under the guise of extending the remedy by injunction to a new situation, interfere with the fundamental right of trial by jury in cases within the class covered by the constitutional provisions for its preservation."

For the reasons given the provision relating to the issuance of an injunction in section 11075 cannot be maintained.

The wide scope of the injunction order challenges attention; whether such a sweeping order is valid we are not now called upon to decide; but see High on Injunctions, 4th ed., sec. 37.

Let a permanent writ of prohibition issue as prayed for.

*Writ granted.*

ASSOCIATE JUSTICES STARK and MATTHEWS and HONORABLE THEODORE LENTZ, District Judge, sitting in place of MR. JUSTICE HOLLOWAY, disqualified, concur.

MR. JUSTICE GALEN, Concurring.—I concur in the result reached, and quite generally with the law as enunciated in the opinion. However, the case has been given more serious consideration than it deserves, and I do not wish to have it understood from language employed in the opinion that it is within the legislative province to confer general jurisdiction upon courts of equity in strictly criminal actions. Injunctions against nuisances, trespass, riot · operations or threatened operations in defiance of the law, and the like, are in an entirely different category, and the authority of a court of equity to interfere in such cases has universally been recognized. An injunction against the further violation of a criminal statute by an offender, embraced in a judgment of conviction, is, to say the least, anomalous. He is enjoined by the law itself, and for subsequent breach must be accorded the same character of trial guaranteed him by the Constitution.