THE PEOPLE OF THE STATE OF NEW YORK on the Relation of the Following: JOHN J. BENNETT, JR., as Attorney-General of the State of New York, JAMES BYRNE and Others, as Members of and Constituting the Board of Regents of the University of the State of New York, and FRANK P. GRAVES, as President of the University of the State of New York and Commissioner of Education of the State of New York, Appellants, *v.* EARL S. LAMAN, Respondent.*

Third Department, April 28, 1937.

* Affg. 158 Misc. 909.

*John J. Bennett, Jr., Attorney-General* [*Henry Epstein, Solicitor-General, Sol Ullman, Assistant Attorney-General,* and *Ernest E. Cole* of counsel], for the appellants.

*Larkin, Andrews & McNaughton* [*Glen N. W. McNaughton* and *Hervie E. Harris* of counsel], for the respondent.

McNAMEE, J. This action is brought for an injunction to restrain the defendant permanently from practicing medicine in this State, in violation of article 48 of the Education Law. In their complaint the plaintiffs allege that the defendant is neither qualified nor licensed to practice medicine in this State; that he fraudulently represents himself as a qualified practitioner of medicine, in violation of the provisions of sections 1250 and 1263 of that law, and deceives large numbers of people thereby; that the defendant held and holds himself out in the city of Binghamton as able to diagnose and treat human disease, and that he undertook to do so, and did practice medicine within the meaning of such law, and continues to do so, and that such practice by the defendant endangers the public health, and is a public nuisance.

The complaint also alleges that in the year 1932, and again in the year 1935, the defendant was charged with crime, and was prosecuted in a criminal action by the People of the State, for unlawfully practicing medicine in the city of Binghamton, in violation of the sections above mentioned; that in those criminal actions the defendant was tried in the City Court of Binghamton, and was acquitted by the verdict of a jury in each instance.

Plaintiffs have alleged that " the constituted authorities  *  *  * are powerless to deal with defendant " on account of his unlawful practice of medicine; that a multiplicity of criminal prosecutions of the defendant will be necessary; that the penalties prescribed by law are insufficient punishment for defendant and do not afford protection to the health of the public against the defendant; and accordingly the plaintiffs have no adequate remedy at law, and seek to restrain the defendant from practicing medicine, or chiropractic; or maintaining an office therefor, or using the title chiropractor.

By the provisions of section 1263 of the Education Law, the unlawful practice of medicine, as set forth in the complaint, is a misdemeanor, for which the perpetrator may be punished as a first offense by fine or imprisonment, or both, and as a second offense he shall be mandatorily punished by both. All Courts of Special Sessions are empowered to hear, try and determine such crimes without indictment, and to impose the punishment prescribed. Such crimes in Broome county must be prosecuted by the Attorney-General, in behalf of the People, and not by the district attorney. Under this section, unusual provisions are made and presumptions created to facilitate the prosecution and conviction of those charged with the unlawful practice of medicine.

As seen, the statute defines a new crime, prescribes a criminal trial and punishment, as well as the courts in which it may be prosecuted. It confers jurisdiction, in the first instance, on the Courts of Special Sessions only. Accordingly, any warrant for the maintenance of this action in equity must be sought outside of the Education Law.

The plaintiffs urge that the unlawful practice of medicine is a public nuisance; however, the statute in question does not so provide. Accordingly, it must be so, if at all, because of some other general statute. The only one called to our attention, which defines a public nuisance, is that part of the Penal Law relating to public safety and entitled "Nuisances" (§ 1530). A violation of that provision is a misdemeanor, and is to be prosecuted and is punishable as such (§§ 1532, 1937). That part of the Penal Law which has to do particularly with the public health makes it a misdemeanor to violate health laws or regulations (§§ 1740, 1744). And a violation of the Public Health Law may be declared a misdemeanor, and a penalty imposed (§§ 2-b, 17). Thus it appears that these great statutes which have to do with the unlawful practice of medicine, and the public health, make violations of their provisions crimes, subject to prosecution and penalties. And if defendant's conduct were to be regarded as a public nuisance, that likewise would be subject to inquiry under the provisions of the Code of Criminal Procedure. And it has been held on respected authority that the unlicensed practice of the healing art, in and of itself, is not a nuisance. (*People ex rel. Shepardson* v. *Universal Chiropractors' Assn.*, 302 Ill. 228; 134 N. E. 4; *State* v. *Maltby*, 108 Neb. 578; 188 N. W. 175; *Dean* v. *State*, 151 Ga. 371; 106 S. E. 792; *Redmond* v. *State ex rel. Attorney-General*, 152 Miss. 54; 118 So. 360; *State* v. *Johnson*, 26 N. Mex. 20; 188 P. 1109.)

Of course, the practice of medicine was not defined at common law, nor was its practice without a license a criminal offense; and

in so far as the Legislature has given expression to the public policy of the State, with reference to the illegal practice of medicine, it has done so by these and similar statutes. And it is clear that the declared public policy is that those who engage in that practice shall be prosecuted in the manner prescribed for the prosecution of those guilty of crime. In other words, we have under review a complaint charging conduct that is clearly criminal, which calls for criminal prosecution, and with which the criminal courts are fully competent to deal. It is in these circumstances the plaintiffs seek a remedy by injunction at the hands of a court of equity.

Some of the States have passed legislation conferring power on the courts of equity to restrain the practice of medicine without a license. (*State* v. *Fray*, 214 Iowa, 53; 241 N. W. 663; *Board of Medical Examiners* v. *Blair*, 57 Utah, 516; 196 P. 221.) In other States, courts of equity have extended relief at the suit of the public without such statutory authority. (*State* v. *Anderson*, 6 Tenn. Civ. App. 1; *State* v. *Smith*, 43 Ariz. 131; 29 P. [2d] 718.) No case in this State has been found where that has been done. And the weight of authority has taken the opposite view, namely, that courts of equity, apart from statutory authority, will not grant relief in criminal cases, except in limited fields bearing no relation to the case in hand. (*People ex rel. Chiropractic League of California* v. *Steele*, —— Cal. ——; 40 P. [2d] 959; *State* v. *Maltby, supra; State ex rel. Stewart* v. *District Court*, 77 Mont. 361; 251 P. 137; *State* v. *Ehrlick*, 65 W. Va. 700; 64 S. E. 935; *People ex rel. Shepardson* v. *Universal Chiropractors' Assn., supra.*)

What appears to be the leading case in this State, on the general subject and the like principle, was decided more than a century ago. Chancellor KENT said in 1817, in a case where an attempt was made to enjoin a corporation from conducting a banking house in violation of the act of April 6, 1813, entitled " An Act * * * to restrain Unincorporated Banking Associations ": " The application for the injunction is not because it is intended to be merely auxiliary to a proceeding at law. The entire and final remedy is sought in this court. [p. 376.] * * * Banking has now become a franchise derived from the grant of the Legislature, and subsisting only in those who can produce the grant; if exercised by other persons, it is the usurpation of a privilege, for which a competent remedy can be had by the public prosecutor in the Supreme Court. I cannot find that this court has any ordinary concurrent jurisdiction in the case." (p. 377.) And again he said: " The charge contained in the information savors, then, so much of a criminal offence that it would require a clear and settled practice to justify the interference of this court,

when that interference is not called for, in aid of a prosecution at law.  *  *  *  If a charge be of a criminal nature, or an offence against the public, and does not touch the enjoyment of property, it ought not to be brought within the direct jurisdiction of this court, which was intended to deal only in matters of civil right, resting in equity, or where the remedy at law was not sufficiently adequate. [p. 378.]  *  *  *  Assuming the charges in the information to be true, it does not appear to me that the banking power, in this case, produces such imminent and great mischief to the community as to call for this summary remedy." (p. 379.) And again he says: " I know that the court is in the practice of restraining private nuisances to property, and of quieting persons in the enjoyment of private right; but it is an extremely rare case, and may be considered, if it ever happened, as an anomaly, for a court of equity to interfere at all  *  *  *  to put down a public nuisance which did not violate the rights of property, but only contravened the general policy." (p. 380.)  The chancellor then observes that the equity power of the court, in cases of public nuisance, had not been exercised in a century and a half, and referring to the charge then pending, that the defendant had exercised banking powers which was an offense against the State, that " There is no case in which an information has been sustained in this court on such grounds. [p. 383.]  *  *  *  It is well understood that public nuisances are public offences over which the courts of law have had a uniform and undisputed cognizance." (p. 390.)  And finally he concludes: " The plain state of the case, then, is that an information is here filed by the Attorney-General, to redress and restrain, by injunction, the usurpation of a franchise, which, if true, amounts to a breach of law and of public policy. I may venture to say that such a prosecution is without precedent in this court, but it is supported by a thousand precedents in the courts of law. [p. 390.]  *  *  *  The whole question, upon the merits, is one of law, and not of equity.  The charge is too much of the nature of a misdemeanor to belong to this court." (p. 391.) (*Attorney-General* v. *Utica Ins. Co.*, 2 Johns. Ch. 371, 376–380, 383, 390, 391.)

[The case from which the foregoing quotations have been made appears to have been recognized, unquestioned, or cited as an authority, from that time until the present. (*People* v. *Ballard*, 134 N. Y. 269, 274; *People* v. *Hudson River Connecting R. R. Corp.*, 228 id. 203, 223; *People ex rel. Lemon* v. *Elmore*, 256 id. 489, 492.)

The plaintiffs urge also that defendant should be restrained by injunction from practicing medicine without a license, because it is one of the professions or callings which have come, from time

to time, within the license aspects of our legislation, and is forbidden by law. Of course, if this were so, it would apply with equal force to dentists, apothecaries, druggists, registered nurses, as well as to architects, engineers and those in many other licensed pursuits, as it would have applied to that of the lawyer prior to the enactment of article 75-A of the Civil Practice Act. But no case has been referred to where injunctive relief was granted on that ground. On the contrary, for the purpose of conferring that jurisdiction on courts of equity, the Legislature by chapter 387 of the Laws of 1935, provided that the Attorney-General or a bar association could maintain an action in equity to restrain the illegal practice of the law.

The plaintiffs complain that because of the present condition of the law, the fines and imprisonments prescribed by the Education Law are an insufficient punishment to deter the defendant, and the juries will not convict; and accordingly the plaintiffs have no adequate remedy at law. It is thus made evident that equitable relief is not sought here in the aid of an action at law, but as a substitute therefor. The plaintiffs would have courts of equity depart from their ancient course, and take over jurisdiction of crimes, and that, too, a jurisdiction which the Legislature has specifically assigned to other tribunals. If it were as alleged, that the procedure and the punishment are inadequate, courts of equity would be slow to enter the new field to supply the deficiency. Resort should be had to the Legislature to meet that need. Courts of equity not only have no criminal jurisdiction, but, following a well-established general rule, they will not grant injunctions in such cases to restrain crime not violative of plaintiffs' property or private rights. (1 Whitehouse Equity Practice, 731, § 453; 5 Pomeroy's Equity Jurisprudence [4th ed.], 4662, § 2065, being 2 Pom. Eq. Rem. [2d ed.] § 644.)

Thus we have reached the conclusions that the practice of medicine without a license is a crime under the statute; that there is an adequate remedy provided at law; that the maintenance of this action would require a substitution of a court of equity and equitable remedies for the tribunal and the remedies prescribed by the statute; and that a court of equity is without jurisdiction in these circumstances. Accordingly, the complaint does not state a cause of action, and was properly dismissed.

The order and judgment of the Special Term should be affirmed, with costs.

HILL, P. J., RHODES, BLISS and HEFFERNAN, JJ., concur.

Order and judgment affirmed, with costs.